UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------X

UNITED STATES OF AMERICA

   - against -

JERODD WATKINS,

                      Defendant.

------------------------------------X

12 Cr. 282(RWS)

SENTENCING OPINION

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/25/13

**Sweet, D.J.**

On August 3, 2012, Jerodd Watkins ("Watkins" or "Defendant") appeared before the Honorable Ronald L. Ellis in the Southern District of New York and allocated to Counts 1 and 2 of the Indictment without the benefit of a plea agreement. For the reasons set forth below, Watkins will be sentenced to 60 months' imprisonment to be followed by 3 years supervised release on Count 1 and 6 years supervised release on Count 2 to run concurrently. Defendant will forfeit to the United States any property constituting proceeds from the offense. Defendant will also be required to pay a special assessment of $200.

1

**Prior Proceedings**

Indictment S1 12 CR 282 (RWS) was filed in the Southern District of New York on April 10, 2012. Count 1 charged that on March 27, 2012, in the Southern District and elsewhere, Defendant and Levi Lynch ("Lynch") and others known and unknown conspired to distribute and possess with intent a quantity of crack cocaine in violation of 21 U.S.C. § 841(b)(1)(C). Count 2 charged that on March 27, 2012, in the Southern District and elsewhere, Defendant and Lynch distributed and possessed with intent a quantity of crack cocaine in violation of 21 U.S.C. § 841(b)(1)(C) and within one thousand feet of a housing facility owned by a public housing authority.

As a result of committing the controlled substance offense alleged in Counts 1 and 2, Watkins and Lynch shall forfeit to the United States, pursuant to 21 U.S.C. § 853, any property constituting proceeds from the offense. If any of the property subject to forfeiture cannot be located upon the exercise of due diligences, has been transferred to a third party, has been placed beyond the Court's jurisdiction, has been substantially diminished in value, or has been commingled with other property, it is the intention of the government, pursuant

to 21 U.S.C. § 853(p), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property.

On August 3, 2012, Watkins appeared before the Honorable Ronald L. Ellis, and allocated to Counts 1 and 2 of the Indictment.

Watkins sentencing is scheduled for April 25, 2013.

**The Sentencing Framework**

In accordance with the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), and the Second Circuit's decision in United States v. Crosby, 397 F.3d 103 (2d Cir. 2005), the sentence to be imposed was reached through consideration of all of the factors identified in 18 U.S.C. § 3553(a), including the advisory Guidelines. Thus, the sentence to be imposed here is the result of a consideration of:

    (1)   the nature and circumstances of the offense and the history and characteristics of the defendant;

    (2)   the need for the sentence imposed —

        (A)   to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

- (B) to afford adequate deterrence to criminal conduct;

- (C) to protect the public from further crimes of the defendant; and

- (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for —

- (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . .;

(5) any pertinent policy statement . . . [issued by the Sentencing Commission];

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). A sentencing judge is permitted to find all the facts appropriate for determining a sentence, whether that sentence is a so-called Guidelines sentence or not. See Crosby, 397 F.3d at 114-15.

**The Defendant**

The Court adopts the facts set forth in the Presentence Investigation Report ("PSR") with respect to Watkins' personal and family history.

**The Offense Conduct**

The following description draws from the PSR. The specific facts of the underlying conduct are adopted as set forth in that report.

On March 27, 2012, at approximately 1:30 p.m., at the corner of Boston Road and 178th Street, Bronx, New York, Watkins, along with Lynch, sold a small quantity of crack cocaine to an undercover officer. When arrested, Watkins was found to be in possession of additional crack cocaine.

On March 28, 2012, Watkins was released on his own recognizance but was subsequently arrested by federal authorities on April 11, 2012, and has been remanded since that date.

The amount of crack cocaine attributable to the

Defendant is less than 1.4 grams.

**Defendant's Criminal History**

On January 3, 1997, Defendant was convicted of Robbery in the second degree in Bronx, New York Supreme Court. He was sentenced to 5 years' probation.

According to the records of the New York City Police Department ("NYPD"), on June 13, 1998, at 1010 East 178th Street, Bronx, New York, the defendant sold a quantity of controlled substance in exchange for U.S. currency. Defendant was convicted of Criminal Possession of a Controlled Substance in the third degree and Criminal Sale of a Controlled Substance in the third degree in Bronx, New York Supreme Court.

On May 7, 1999, the defendant was sentenced to 1 to 3 years' imprisonment in Bronx, New York Supreme Court. He was received in NYS Department of Correctional Services custody on May 28, 1999, and was released from Downstate Correctional Facility to NYS Division of Parole supervision on August 15, 1999. According to the records of the NYS Parole Division, while on supervision, the defendant received violations due to

rearrest. On September 14, 2000, parole was revoked and he was restored to restored to Willard Drug Treatment Campus Program at Edgecombe Correctional Facility. On April 6, 2001, defendant's release was revoked as a result of failing to successfully complete the Willard DTC Program and he was held in custody until September 7, 2001, his maximum expiration date.

According to the records of the NYPD, on December 12, 2002, at 1010 East 178th Street, Bronx, New York, the defendant was observed to be in a public housing location without any authority to be therein. Defendant was convicted of Criminal Trespass in the second degree of Bronx, New York Criminal Court.

According to the records of the NYPD, on April 22, 2004, at 1010 East 178th Street, Bronx, New York, the defendant punched and hit the complainant with a fan on the head causing injuries.

According to the records of the NYS Parole Division, on January 22, 2004, at 1010 East 178th Street, Bronx, New York, Jeanine Pallimono's body was found in a stairwell of the building, naked and dead. The victim reportedly was a known prostitute. She was examined by the medical examiner's office,

who deemed her death as a homicide by strangulation. Based upon an official police investigation, it was learned that Jerrod Watkins strangled the victim causing her death. He was subsequently arrested on August 15, 2004.

On October 1, 2008, the defendant was sentenced to six years' imprisonment in Bronx, New York Supreme Court to run concurrent to six years' imprisonment each on Indictments #90089-2005 & #02441-08. He was received in NYS Department of Correctional Services custody on January 15, 2009, and was released from Downstate Correctional Facility to NYS Division of Parole supervision on November 16, 2010. According to the records of the NYS Parole Division, while on supervision, the defendant again received violations due to rearrest. A violation and warrant was filed on May 25, 2012, and is currently pending court action in the instant offense. The defendant's maximum expiration date is November 16, 2015.

According to the records of the NYS Parole Division, on August 9, 2004, at approximately 3:00 p.m., at 1010 East 178th Street, Apt.#3H, Bronx, New York, based upon an official police investigation, it was learned that Jerrod Watkins, while acting in concert with Doris Edwards, requested that Edwards go get the

victim, Diana Almestica, a known prostitute. Approximately 15 minutes later, Edwards returned to the apartment with the victim. Watkins directed the victim into the back bedroom where others, known to the police, were also present. Watkins demanded money owed to him by the victim. He then beat her about the face with an open hand and closed fist. He wrapped his arms around her neck and choked her into unconsciousness. Thereafter, the victim regained consciousness and Watkins wrapped both hands around her neck and proceeded to strangle her to death. The defendant removed her clothing and stuffed her body into a clear plastic garbage bag. The victim was dragged from the apartment and dumped onto a third floor stairwell where the body was discovered an hour later. One of the accomplices was tied to the scene by forensic evidence. Watkins was then linked to the crime scene as the perpetrator. His criminal actions were corroborated by other witnesses.

According to the records of the NYS Parole Division, on January 4, 2003, at approximately 1:10 a.m., at 1010 East 178th Street, Bronx, New York, the defendant, while acting in concert with unapprehended others, approached the victims, Dennis Lopez, Shmuel Tovi, and Shardae Struther, and physically assaulted them. He then forcibly robbed them of their jackets.

9

The defendant remained at large until his arrest on February 11, 2008.

**The Relevant Statutory Provisions**

For Count 1, the maximum term of imprisonment is 20 years, pursuant to 21 U.S.C. §§ 841(b)(1)(C) and 846. For Count 2, the mandatory minimum term of imprisonment is 1 year; the maximum term of imprisonment is 40 years, pursuant to 21 U.S.C. §§ 841(b)(1)(C) and 860.

For Count 1, if a term of imprisonment is imposed, the Court may impose a mandatory minimum term of supervised release of three years, pursuant to 21 U.S.C. §§ 841(b)(1)(C) and 846. For Count 2, if a term of imprisonment is imposed, the Court may impose a mandatory minimum term of supervised release of six years, pursuant to 21 U.S.C. §§ 841(b)(1)(C) and 860.

For Count 1, the defendant is not eligible for probation because he is being sentenced at the same time to a term of imprisonment on a different count or case, pursuant to 18 U.S.C. § 3561(a)(3). For Count 2, the defendant is not eligible for probation because the instant offense is a Class B

felony, pursuant to 18 U.S.C. § 3561(a)(1).

The maximum fine for Count 1 is $1,000,000, pursuant to 21 U.S.C. §§ 841(b)(1)(C) and 846. The maximum fine for Count 2 is $2,000,000, pursuant to 18 U.S.C. § 3571.

A special assessment of $100 per count, totaling $200, is mandatory, pursuant to 18 U.S.C. § 3013.

Pursuant to 21 U.S.C. § 862(a)(1)(A) upon a first conviction for distribution of a controlled substance, a defendant may be declared ineligible for any or all Federal benefits for up to five years as determined by the Court.

As a result of committing the offenses alleged in Counts 1 and 2 of the Indictment, the defendant shall forfeit to the U.S., pursuant to 18 U.S.C. § 1963(a)(1), (a)(2), and (a)(3), all property real and personal, involved in the offense or traceable to such property.

**The Guidelines**

The November 1, 2012 edition of the United States

Sentencing Commission Guidelines Manual has been used in this case for calculation purposes, pursuant to § 1B1.11(a). The Court finds the following with respect to Defendant's applicable offense level, criminal history, recognition of responsibility, and term of imprisonment:

Counts 1 and 2 will be grouped pursuant to §3D1.2(d), as the offense level is determined largely on the basis of the total amount of the quantity of narcotics involved and the offense guideline is written to cover such behavior.

The guideline for violations of 21 U.S.C. § 846 and 21 U.S.C. §§ 841(b)(1)(C) and 860 are found in §2D1.1. The approximate amount of crack cocaine attributable to the defendant is less than 1.4 grams. The offense level specified in the Drug Quantity Table under §2D1.1(c)(14), sets a base offense level of 12 for this quantity.

The guideline for violations of 21 USC846 and 21 USC 841(b)(1)(C) and 860 are found in §2D1.1. The approximate amount of crack cocaine attributable to the defendant is less than 1.4 gams. The offense level specified in the Drug Quantity Table under §2D1.1(c)(14), sets a base offense level of 12 for

this quantity.

As is shown in Part B (Criminal History) of the Presentencing Report, the defendant has been convicted of Robbery 2nd degree and Attempted Manslaughter 1st degree. Since the instant offense is a felony controlled substance offense and the defendant was 18 years or older at the time of its commission, the defendant is a career offender within the meaning of §4B1.1 of the guidelines. The offense level determined under §4B1.1(b)(C) is 32 rather than the lower level of 10 calculated above.

The defendant, in conjunction with defense counsel, indicated that his plea allocution will stand as his statement regarding his participation in the instant offense, therefore the offense level is reduced by 3.

Accordingly, the total offense level is 29.

Based on a total offense level of 29 and a Criminal History Category of VI, the guideline range for imprisonment is 151 to 188 months.

For Count 1, the guideline range for a term of supervised release is three years, the minimum required by statute, pursuant to Section 5D1.2(c). For Count 2, the guideline range for a term of supervised release is 6 years, the minimum required by statute, pursuant to Section 5D1.2(c).

Because the applicable guideline range is in Zone D of the Sentencing Table, the defendant is not eligible for probation, pursuant to §5B1.1, Application Note #2. Furthermore, with regard to Count 2, the defendant is not eligible for probation because the instant offense is a Class B felony, pursuant to §5B1.1(b)(1).

The fine range for the instant offense is from $15,000 to $3,000,000 pursuant to §5E1.2(c)(3)(A) and (c)(4).

Subject to the defendant's ability to pay, in imposing a fine, the Court shall consider the expected costs to the Government of any imprisonment, probation, or supervised release pursuant to §5E1.2(d)(7). The most recent advisory from the Administrative Office of the United States Courts suggests a monthly cost of $2,407.78 to be used for imprisonment, a monthly cost of $286.11 for supervision, and a monthly cost of $2,180.27

for community confinement.

**The Remaining Factors of 18 U.S.C. § 3553(a)**

Having engaged in the Guidelines analysis, this Court also gives due consideration to the remaining factors identified in 18 U.S.C. § 3553(a) to impose a sentence "sufficient, but not greater than necessary," as is required by the Supreme Court's decision in Booker, 543 U.S. 220, and the Second Circuit's decision in Crosby, 397 F.3d 103.

In light of the Court's statutory responsibility "to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing," Kimbrough v. United States, 552 U.S. 85, 102 (2007) (quoting 18 U.S.C. § 3553(a)), and having considered the Guidelines and all of the factors set forth in § 3553(a), it is determined that a downward departure from the Guidelines sentence is warranted in the instant case.

Under 18 U.S.C. § 3553(a)(1), the Court considers "the nature and circumstances of the offense and the history and characteristics of the defendant." Pursuant to 18 U.S.C. § 3553(2)(A), the Court weighs the need for the sentence imposed to

15

reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.

The small amount of crack cocaine involved in the offense, the defendant's motivation for participating in the offense (to purchase presents for his four children), his difficult life and his efforts while incarcerated that demonstrate his commitment to self-improvement are considerations to be taken into account. In addition, although the defendant has a significant criminal history, his prior offenses took place over eight years ago. Defendant also has a history of depression, dating back to 1989 and has been under treatment from mental health specialists.

The Probation Office has also acknowledged the defendant's efforts at "self-improvement" while incarcerated and the steps he's taking towards becoming a law-abiding member of society. Based upon the nature and circumstances of the offense and the history and characteristics of the defendant, as well as the defendant's Career Offender designation, a downward from the advisory guidelines is warranted in this case.

Taken into account all of the above, a downward

departure from the Guidelines sentence is warranted.

**The Sentence**

For the instant offense, Watkins will be sentenced to 60 months' imprisonment and 3 years' supervised release on Count 1 and 6 years' supervised release on Count 2 to run concurrently.

The defendant has been detained without bail since his arrest. He is not a candidate for voluntary surrender because of the provisions found in 18 USC § 3143(a)(2).

As mandatory conditions of his supervised release, Defendant shall: (1) not commit another federal, state, or local crime; (2) not illegally possess a controlled substance; (3) not possess a firearm or destructive device; and (4) cooperate in the collection of DNA as directed by the probation officer. The mandatory drug testing condition is suspended due to imposition of a special condition requiring drug treatment and testing.

Furthermore, the standard conditions of supervision

(1-13), set forth in the judgment, shall be imposed with the additional special conditions:

(1) The defendant will participate in a program approved by the United States Probation Office, which program may include testing to determine whether the defendant has reverted to using drugs or alcohol. The Court authorizes the release of available drug treatment evaluations and reports to the substance abuse treatment provider, as approved by the Probation Officer. The defendant will be required to contribute to the costs of services rendered (co-payment), in an amount determined by the probation officer, based on ability to pay or availability of the third-party payment.

(2) The defendant shall participate in a mental health program approved by the U.S. Probation Office. The defendant shall continue to take any prescribed medications unless otherwise instructed by the health care provider. The defendant shall contribute to the costs of services rendered not covered by third-party payment, if the defendant has the ability to pay. The Court authorizes the release of available psychological and psychiatric evaluations and reports to the health care provider.

(3) The defendant is to report to the nearest Probation Office within 72 hours of release from custody.

If the defendant is sentenced to any period of supervision, it is recommended that the defendant be supervised by the district of residence.

The defendant shall forfeit the defendant's interest in any property constituting proceeds from the offense to the United States as indicated in the Indictment.

A special assessment of $100, payable to the United States, is mandatory and shall be due immediately.

The terms of this sentence are subject to modification at the sentencing hearing scheduled for April 25, 2013.

It is so ordered.

**New York, NY**
**April 25, 2013**

_____
ROBERT W. SWEET
U.S.D.J.